IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PARISH GOLDEN,

                      OPINION AND ORDER

            Plaintiff,

                      09-cv-442-bbc

     v.

RICHARD RAEMISCH, CATHY JESS,
RICHARD PHILLIPS, C.O. II M. ROHR and
SUSAN WILLINTIN,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil action for declaratory and monetary relief brought pursuant to 42

U.S.C. § 1983.  Plaintiff Parish Golden, an inmate at Dodge Correctional Institution in

Waupun, Wisconsin, contends that defendants violated his First Amendment rights by

refusing to allow him to purchase a pocket dictionary from outside the prison where he was

incarcerated at the time.  Defendants denied plaintiff's request because another pocket

dictionary was available for purchase in the prison canteen.  At the time, the prison had a

rule prohibiting prisoners from purchasing items from outside vendors if "like or similar"

items were available at the prison canteen.

      Presently before the court is defendants' motion for summary judgment in which they

1

argue that (1) the prison-wide policy is reasonably related to a legitimate security interest in reducing the amount of contraband into the prison; (2) defendants enjoy qualified immunity from plaintiff's First Amendment claim; and (3) defendants cannot be held liable for any punitive damages.  Applying the standard from <u>Turner v. Safley</u>, 482 U.S. 78 (1987), I conclude that the policy in effect at the time denying plaintiff's dictionary purchase from an outside vendor is reasonably related to legitimate penological interests.  Accordingly, I will grant defendants' motion for summary judgment.  It is unnecessary to address defendants' remaining arguments in support of summary judgment.

From the proposed findings of fact and the record, I find the following facts to be material.

UNDISPUTED FACTS

A. <u>Parties</u>

Plaintiff Parish Golden is an inmate at Columbia Correctional Institution, in Portage, Wisconsin.  At all times relevant to this action, he was incarcerated at the Dodge Correctional Institution in Waupun, Wisconsin.  At all relevant times, defendant Cathy Jess was employed as the Warden of Dodge Correctional Institution.   Defendant Richard Phillips is the corrections security director.  Defendant Susan Wallintin is the financial program supervisor.  Richard Raemisch is Secretary of the Wisconsin Department of

2

Corrections.  Mark Rohr is a correctional officer.

## B. Property Policy

Wardens at Wisconsin prisons have the authority to develop policies and procedures relating to inmates' acquisition, possession and use of personal property, subject to approval by the administrator of the Division of Adult Institutions.  At Dodge Correctional Institution, one such policy in the inmate handbook says that "[l]ike or similar items that are sold in DCI Canteen or Hobby may not be purchased from an outside source."  Inmates are not permitted to order what appears to be disallowed property to evaluate its similarity to a product offered in the prison canteen.

If an inmate wishes to purchase a particular item not available in the prison canteen, he must make a disbursement request to purchase the item.  At that point a correctional officer inspects the request and makes a determination based on Wis. Admin. Code § DOC 309.20 and the policies and procedures established by the administrator or by the warden relating to the acquisition and possession of personal property.  Further, if an inmate can demonstrate a need for a specific product not available in the prison canteen, he is given the opportunity to submit a request for further consideration.

Prison staff monitor and control authorized property in an inmate's possession to help prevent the possible manufacture of weapons or contraband and to suppress trafficking

3

between inmates.  The prison's "like or similar items" policy was put into effect to decrease the risk of introducing contraband into the institution.  Items such as paper money, needles and even small amounts of narcotics can be concealed in the pages of books.  In addition, the policy is aimed at decreasing the strain on prison resources.  Each piece of inmate mail that comes into the prison must be searched for contraband.

## C. Plaintiff's Request

On June 27, 2007, plaintiff submitted a disbursement request and order form to purchase a new Webster's II Revised Dictionary, which is a pocket-style dictionary. Defendant Rohr informed plaintiff that "the business office will no longer allow purchases from the outside if we sell them in the canteen."  At that time, the canteen offered another pocket dictionary for sale. Rohr told plaintiff his request could be considered if he demonstrated a need for a specific product not available in the canteen.  Plaintiff did not explain why the canteen version was not suitable.

On July 1, 2007, plaintiff submitted an "interview/information" request form to defendant Wallintin as well as to the deputy warden. Plaintiff wanted to know why he could not order the Webster's II Revised Dictionary when it is "a book/Publication not sold on your canteen."  In her response to the request, Wallintin told plaintiff that "we sell a dictionary through [the] canteen" and that "like or similar items sold in the canteen cannot

4

be ordered from an outside vendor." Jess told plaintiff that he could purchase the dictionary in the canteen "unless there is some specific reason you need a different version."

In an inmate complaint dated July 7, 2010, plaintiff wrote that the decision to deny his request for a dictionary was a violation of his constitutional rights and "a clear cut issue of censorship." He said that the prison "does not sell this specific dictionary," but he did not identify any problems with the dictionary in the canteen. The inmate complaint examiner recommended dismissal of the complaint under the "like or similar items" rule in the inmate handbook. Defendant Jess affirmed on the same ground. Plaintiff appealed the decision, repeating his argument that the policy violated the First Amendment and that the canteen does not sell the dictionary he wanted to order. In addition, he alleged that "other inmates are allowed to order other dictionaries." Again, he did not identify any reason for believing that the dictionary he wished to order was superior to the dictionary available in the canteen. Defendant Raemisch affirmed the dismissal of the complaint.

On July 22, 2007, plaintiff again wrote to defendant Jess, pointing out that the Webster's II Revised Dictionary was not available in the prison canteen and asking why he was not allowed to purchase from a retail outlet. Plaintiff said that other inmates at Dodge Correctional Institution had been allowed to purchase dictionaries from outside retail outlets when they were not available in the prison canteen. Plaintiff also wrote to defendant Phillips asking for an explanation concerning why he could not purchase the dictionary from a retail

5

outlet and whether the dictionary threatened security.  On July 24, 2007, defendant Phillips responded, pointing plaintiff to the rule in the inmate handbook.  On July 26, 2007, defendant Jess responded to plaintiff's letter.  In her response, Jess indicated that she had previously addressed plaintiff's issue in her July 2, 2007 correspondence and advised him that her office would not address the issue again.

Sometime after plaintiff made his request, the prison began using "approved vendor catalogs."  These catalogs feature property preapproved by security and allowed at all designated institutions.  One of the approved vendors in this catalog is Jack C. Marcus, Inc.  On July 9, 2008, while the approved vendor catalogs were in effect, plaintiff submitted a disbursement request and order form for the Webster's II Revised Dictionary.  Plaintiff received a copy of the Webster's II Revised Dictionary on July 21, 2008 from Jack C. Marcus Inc.

OPINION

A. <u>First Amendment</u>

Defendants do not deny that the First Amendment was implicated by plaintiff's request for a dictionary.  <u>King v. Federal Bureau of Prisons</u>, 415 F.3d 634, 638 (7th Cir. 2005) (prisoner had limited First Amendment right to purchase book on computer programming).  However, even when a prison regulation limits an inmate's constitutional

rights, the regulation is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). To determine the reasonableness of the prison regulation, courts examine four factors set out in Turner: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) whether accommodation of the asserted constitutional right will have negative effects on guards, other inmates or prison resources; and (4) whether there are obvious, easy alternatives at a de minimis cost. Turner, 482 U.S. at 89-91.

1. Legitimate penological interests

The first Turner factor is whether a valid, rational connection exists between the regulation and a legitimate government interest. Turner, 482 U.S. at 89. A regulation cannot be sustained if the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Id. at 89-90.

Defendants denied plaintiff's request under the rule that prohibited prisoners from ordering items when "like or similar" items were available at the prison. The reason for this rule is to decrease the opportunities for contraband to come into the prison. Of course, reducing contraband is a legitimate concern. E.g., Bell v. Wolfish, 441 U.S. 520, 555 (1979). Because every item that comes into the prison presents a risk of contraband, it is

7

rational to believe that a rule that limits the items coming into the prison would decrease the amount of contraband as well. Books in particular present a risk because of the items that may be hidden between their potentially hundreds of pages. Jones v. Salt Lake County, 503 F.3d 1147, 1158 (10th Cir. 2007) (concluding that ban on ordering books from outside source was logically related to interest in reducing contraband).

In his brief, plaintiff says that defendants have admitted that the dictionary he wished to order was not objectionable. In response to an interrogatory asking whether his requested dictionary was "a threat to the security of the institution," defendants answered that the dictionary "was not denied due to a security threat." Plt.'s Aff., dkt. #37, exh.36. Although plaintiff touts this answer as evidence that defendants have committed perjury, there is no inconsistency. The responses to plaintiff's grievances show that defendants were never concerned about the content of the dictionary. Rather, the rule is concerned with possible contraband that could be hidden in the dictionary.

Plaintiff's reliance on King, 415 F.3d 634, is misplaced. In that case, the government argued that a prisoner should not be allowed to have a book on computer programming because there was a risk that he might misuse the information he learned, but the court concluded that the government had failed to adequately justify that belief. The government did not raise concerns about potential contraband and the court did not consider that issue.

In his grievances, plaintiff seemed to be arguing that the policy was arbitrary or

discriminatory because other prisoners were allowed to order dictionaries.  However, plaintiff does not support that view in his summary judgment materials with any evidence showing the circumstances of the other prisoners' requests, including why they were granted or who granted them.  Accordingly, plaintiff cannot rely on an uneven application of the policy to show that it is invalid.

2. <u>Alternative means of exercising right</u>

The second <u>Turner</u> factor focuses on the existence of alternative means of exercising the right in question.  <u>Turner</u>, 482 U.S. at 90.  This factor weighs strongly in defendants' favor because alternative means are built into the rule itself.  The rule did not apply unless a similar item was available at the prison.  Thus, the scope of information restricted by the rule was inherently limited.

In his proposed findings of fact, plaintiff suggests that the dictionary in the canteen was not an adequate alternative to the dictionary he wanted because it is missing definitions for important words.  Even if I assumed that it would be appropriate under this factor to scrutinize individual entries in the dictionary, it is too late for plaintiff to make this argument now.  Plaintiff had the opportunity on multiple occasions when he made his request to explain why he needed a different dictionary, but he never identified a single reason to believe that the dictionary in the canteen was deficient.  Defendants could not

9

accommodate plaintiff's rights when they did not know of a need for accommodation. To the extent any blame belongs to defendants for failing to realize the canteen dictionary was inadequate in some way, that would be a question of negligence, which cannot be the basis for a constitutional violation. United States v. Norwood, 602 F.3d 830, 835 (7th Cir. 2010) ("[O]nly intentional conduct violates the Constitution.").

### 3. Impact on the prison and potential alternatives to the restriction

The third and fourth Turner factors assess the impact on "guards and other inmates, and on the allocation of prison resources generally" that accommodating the right would have and the availability of "ready alternatives" to the restriction that would have no more than a " de minimis cost to valid penological interests." Turner, 482 U.S. at 90-91. The burden is on the plaintiff to show that defendants could accommodate his right without sacrificing their legitimate interests or imposing an undue administrative burden. Jackson v. Frank, 509 F.3d 389 (7th Cir. 2007).

Plaintiff has made no effort to meet his burden. He has not adduced any evidence other than his own opinion to counter defendants' view that accommodating plaintiff's right in 2007 would have depleted staff resources by requiring more time inspecting incoming mail. Further, although prison officials were able to accommodate plaintiff's request in 2008 through the use of preapproved vendor catalogs, he has adduced no evidence showing that

these catalogs were an available option in 2007.

In sum, because defendants' rule is a rational way to limit contraband in the prison and plaintiff failed to show that the rule prevented him from exercising his First Amendment rights in a meaningful way, the rule is constitutional under the standard set forth in <u>Turner</u>.

## B. The "Publisher Only" Rule

Plaintiff's final argument does not fit within the <u>Turner</u> test.  He cites the Wisconsin Department of Corrections "publisher-only" rule, which states that, "[i]nmates may only receive publications directly from publisher or other recognized commercial sources in their packages." Wis. Admin Code § DOC 309.05(2)(a).  Plaintiff contends that the institution's "like or similar items" policy conflicts with the "publisher-only" rule and therefore violates plaintiff's constitutional rights.

Plaintiff's argument is not persuasive for two reasons.  First, § DOC 309.05 does not create a "right" for a prisoner to receive any book so long as it comes from a publisher; it imposes a *prohibition* on receiving publications from certain sources.  Plaintiff points to nothing in the statutes or regulations that forbids officials at individual prisons from imposing additional rules beyond those required by the Department of Corrections.  Second, even if § DOC 309.05 did prohibit prison officials from adopting more restrictive rules, the only question in this case is whether defendants violated plaintiff's First Amendment rights.

11

Thus, it is irrelevant whether defendants violated state rules or regulations.   <u>Scott v. Edinburg</u>, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations.").


ORDER

IT IS ORDERED that

1. The motion by defendants Richard Raemisch, Cathy Jess, Richard Phillips, C.O. II M. Rohr and Susan Wallintin for summary judgment, dkt. #24, is GRANTED; and

2. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 9th day of August, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge